UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARK ANTHONY ADELL,

        Plaintiff,

v.                                                                                Case No. 19-C-438

JEFFREY MANLOVE and
ROBERT WEINMAN,

        Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

        Plaintiff Mark Anthony Adell, who is a Wisconsin state prisoner representing himself, filed a complaint under 42 U.S.C. § 1983. I screened the complaint and allowed Plaintiff to proceed on Eighth and First Amendment claims against Defendants. Defendants move for summary judgment. Dkt. No. 15. The motion is fully briefed and before this court for decision.

### BACKGROUND

        The facts in this section are taken from Defendants' Proposed Findings of Fact and Declarations in Support. Dkt. Nos. 17–19, 34. Plaintiff submitted Proposed Findings of Fact, which contain additional facts but no responses to Defendants' proposed facts. Dkt. No. 27. Most of Plaintiff's facts are unsupported by evidence in the record. I will consider Plaintiff's proposed facts only to the extent they are supported in his affidavits or by evidence elsewhere in the record and will deem admitted Defendants' facts, to which he failed to respond. *See* Fed. R. Civ. P. 56(c)(1) & (e); Civil L. R. 56(b)(1)(C)(i), (b)(2)(B)(i)–(ii), and (b)(4); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant

as mandated by the local rules results in an admission."). I will consider arguments in the supporting memoranda only to the extent they properly refer to each party's statement of facts. *See* Civil L. R. 56(b)(6).

**A. The Parties**

Plaintiff is an inmate at Waupun Correctional Institution (Waupun), where he has been housed since December 7, 2018. Dkt. No. 17, ¶ 1. He sues Dr. Jeffrey Manlove, his physician at Waupun since December 2018, and Robert Weinman, a registered nurse working as a Nurse Clinician 2 at Waupun. *Id.*, ¶¶ 2–3.

On March 26, 2019, Plaintiff filed his § 1983 complaint against Dr. Manlove, Weinman, and two other defendants. Dkt. No. 1. I screened Plaintiff's complaint and allowed him to proceed on an Eighth Amendment deliberate indifference claim that Dr. Manlove improperly prescribed prednisone and failed to treat his high blood pressure and serious back pain. Dkt. No. 7 at 5–6. I also allowed him to proceed on a First Amendment claim against Dr. Manlove for retaliating against Plaintiff by removing the "Stat" designation in an MRI order in retaliation for Plaintiff's complaints about the accuracy of his clinic notes. *Id.* at 6. Last, I allowed Plaintiff to proceed on an Eighth Amendment deliberate indifference claim that Weinman was aware of Plaintiff's severe back pain and non-receipt of Flexeril that Dr. Manlove ordered to treat the pain but that Weinman "intentionally refused to even attempt to expedite Adell's receipt of Flexeril." *Id.* at 7.

**B. Plaintiff's Relevant Medical Treatment**

On February 15, 2019, Dr. Manlove saw Plaintiff for his back pain and prescribed Flexeril (generic name cyclobenzaprine) for twenty-one days to begin as a routine order. Dkt. No. 17, ¶ 15; Dkt. No. 18-1 at 3. Routine orders for medication are processed the following business day. Dkt. No. 17, ¶ 16. Because February 15, 2019, was a Friday, the order would be processed and begin

2

the next business day, which was Monday, February 18, 2019. *Id.*, ¶ 17. Later that day, Plaintiff submitted a request for health services in which he states that Dr. Manlove "dismissed my back problem as scoliosis," and Plaintiff was unable to lie down or sit without prolonged pain. Dkt. No. 27, ¶ 6; Dkt. No. 29-2 at 22–23.

On February 16, 2019, Weinman received a call from Plaintiff's unit sergeant that Plaintiff was complaining of increased back pain and inquired why he had not yet received the medication Dr. Manlove prescribed the previous day. Dkt. No. 17, ¶ 18. Weinman reviewed Dr. Manlove's prescription from February 15, 2019, which Weinman confirmed was a routine order and not a "stat" or immediate order. *Id.*, ¶ 19. Weinman also noted that the pharmacy had denied Dr. Manlove's order and requested clarification because Plaintiff had too recently been prescribed the same medication. *Id.*, ¶ 20; Dkt. No. 18-1 at 2, 6. Per pharmacy rules, if a patient has been prescribed a short-term medication without proven effects of long-term use (such as Flexeril), the patient cannot receive the same prescription again for three months unless the prescriber fills out a non-formulary request. Dkt. No. 17, ¶ 22. On February 15, 2019, the pharmacy entered a "Clinical Intervention note" directed to Dr. Manlove informing him that the pharmacy could not verify the order for Flexeril:

> Pharmacy cannot verify this order you placed for cyclobenzaprine for 21 days. This patient last got a 2 week supply dispensed on 1//6/19 [sic]. The best I could do would be to dispense a 7 day supply. Otherwise, a Non-formulary request needs to be filled out.

Dkt. No. 18, ¶ 13; Dkt. No. 17, ¶ 21. On January 3, 2019, Dr. Manlove had prescribed Plaintiff Flexeril for fourteen days, also as a routine (not "stat") order. Dkt. No. 17, ¶ 23. The mediation was dispensed to Plaintiff from January 6 to 20, 2019. *Id.*; Dkt. No. 18-1 at 6.

Weinman states he was "uncomfortable" that the pharmacy cancelled Dr. Manlove's Flexeril order for Plaintiff because Plaintiff continued to report back pain. Dkt. No. 18, ¶ 16; Dkt.

3

No. 17, ¶ 24. Weinman contacted the on-call physician, Dr. Fuller (who is not a defendant), who ordered a seven-day prescription of Flexeril for Plaintiff. Dkt. No. 17, ¶¶ 24–25. Weinman wrote Dr. Fuller's Flexeril order on the stock card for the medication room to ensure that Plaintiff would receive his first dose that day, February 16, 2019. *Id.*, ¶ 26.

Weinman saw Plaintiff at the Health Services Unit later that day about his back pain. Dkt. No. 17, ¶ 27. He gave Plaintiff his first dose of Flexeril that Dr. Fuller had ordered. *Id.* Weinman attempted to explain to Plaintiff about the pharmacy's cancellation and why Plaintiff had not yet received the medication. *Id.*, ¶ 28; Dkt. No. 18-1 at 4. Plaintiff became agitated and demanded that Weinman email Dr. Manlove. Dkt. No. 17, ¶ 29; Dkt. No. 18-1 at 4. Weinman refused, and Plaintiff became disrespectful and threatening. Dkt. No. 17, ¶ 29; Dkt. No. 18-1 at 4. Security staff intervened, removed Plaintiff from the Health Services Unit, and escorted him back to his cell. Dkt. No. 17, ¶ 29; Dkt. No. 18-1 at 4. Weinman sent the remaining doses of Flexeril to Plaintiff's housing unit to be dispensed as ordered. Dkt. No. 17, ¶ 29. Once the medication was at the housing unit, unit staff and not Weinman would be responsible for dispensing the medication to Plaintiff. *Id.*, ¶ 30.

After the February 16, 2019 visit, Plaintiff filed a request for health services stating that his medication had not been sent out to be dispensed to him. Dkt. No. 29-2 at 25. A nurse responded that the medication had been issued earlier that day. *Id.* Plaintiff filed two health services requests the next day complaining about not receiving his medication on February 15, 2019; the one-day delay between February 15 and 16, 2019; and Weinman's demeanor and appearance during the February 16, 2019 visit. Dkt. No. 27, ¶¶ 7, 9; Dkt. No. 29-2 at 26–32. He also complained about his medication not being provided to him "stat." Dkt. No. 29-2 at 31.

Plaintiff asserts that he did not receive another dose of Flexeril until the following Monday, February 18, 2019. Dkt. No. 27, ¶ 15; Dkt. No. 29 at 4.

**C. Plaintiff's Inmate Complaint About the February 15, 2019 Visit**

On March 15, 2019, the office of the Inmate Complaint Examiner (ICE) received an inmate complaint from Plaintiff. Dkt. No. 17, ¶ 6. The complaint states that on February 15, 2019, the Health Services Unit refused to see him for back spasms that prevented him from lying down and breathing properly. *Id.* Plaintiff states he was told to submit a request for health services. *Id.* Plaintiff also states that he had not received muscle relaxers that were supposed to have been prescribed "stat" or immediately. *Id.* Plaintiff purports to have signed the complaint on February 15, 2019, but the ICE's office received it one month later. Dkt. No. 19-2 at 8.

An ICE rejected the complaint because Plaintiff had submitted it more than fourteen days after the incident. Dkt. No. 17, ¶ 7; Dkt. No. 19-2 at 2 (citing Wis. Admin. Code § DOC 310.07(2)). Plaintiff appealed the ICE's rejection of his complaint, and the reviewing authority affirmed the rejection. Dkt. No. 17, ¶ 8; Dkt. No. 19-2 at 6. In neither the complaint nor the appeal does Plaintiff contest Dr. Manlove's treatment or prescription of prednisone or allege that Dr. Manlove is retaliating against him. Dkt. No. 17, ¶ 9.

**D. Later Complaints**

Plaintiff filed a series of complaints about Dr. Manlove from June through August 2019—several months after filing this lawsuit. On June 6, 2019, he submitted a complaint stating that Dr. Manlove's supervisor (who is not a defendant) would not allow Plaintiff to see a different doctor despite Plaintiff's repeated complaints about Manlove's "pattern of deliberate indifference, abuse, incompetence, neglect, retaliation and a litany of other abuses." Dkt. No. 34-1 at 11. An

ICE dismissed the complaint, and the Office of the Secretary dismissed Plaintiff's appeal of the dismissal. *Id.* at 2–7.

On June 24, 2019, Plaintiff similarly complained that staff refused to assign him to a different healthcare provider and asked that an ICE investigate the Health Service Unit's refusal to assign him to a different provider. Dkt. No. 34-2 at 8. He attached a request for health services he had submitted on June 3, 2019, in which he states that Dr. Manlove had provided him an improper dose of mesalamine. *Id.* at 9. An ICE rejected the complaint as beyond the fourteen-day time limit for filing inmate complaints, and a reviewing authority affirmed the rejection of the complaint. *Id.* at 2–5.

On June 25, 2019, Plaintiff submitted a complaint stating that Dr. Manlove improperly prescribed him prednisone, putting his health at imminent risk. Dkt. No. 34-3 at 11. Plaintiff attached clinic notes from a visit he had with Dr. Manlove on January 8, 2019, in which Manlove wrote, "I think it's important to try and get him off the prednisone." *Id.* at 12. In another note from the February 15, 2019 appointment, Dr. Manlove wrote that he hoped he could "taper off [Plaintiff's] prednisone" in the near future. *Id.* at 13. On June 5, 2019, Plaintiff refused an appointment with Dr. Manlove. *Id.* at 16. An ICE dismissed the complaint because of Plaintiff's unwillingness to work with the Health Services Unit on his issue, and the Office of the Secretary accepted the dismissal of Plaintiff's appeal. *Id.* at 2–7.

On July 24, 2019, Plaintiff submitted a complaint stating that Dr. Manlove had "caused me to suffer a stroke" on July 11, 2019, from "overprescribing prednisone and refusing to stop it." Dkt. No. 34-4 at 12. An ICE investigated the complaint and confirmed that Plaintiff had suffered a stroke but found no evidence that prednisone caused it. *Id.* at 2. Plaintiff had refused an appointment with a gastroenterologist and later insisted that his medical provider taper his

6

prednisone. *Id.* The ICE dismissed the complaint. *Id.* at 2. The Corrections Complaint Examiner who reviewed Plaintiff's appeal noted that a gastroenterologist had seen Plaintiff on July 22, 2019, and recommended Plaintiff taper off prednisone and start taking Humira. *Id.* at 6. The gastroenterologist did not want to end Plaintiff's prednisone "because patient would be at very high risk for a flare up" of Plaintiff's Crohn's disease. *Id.* Based on the response from health services, the Corrections Complaint Examiner recommended dismissing the appeal, and the Office of the Secretary accepted that recommendation. *Id.* at 5–8.

On August 5, 2019, Plaintiff submitted a complaint stating that it was taking too long for him to receive certain medical procedures. Dkt. No. 30-2 at 4. An ICE dismissed the complaint, and the Office of the Secretary affirmed the dismissal of the complaint. *Id.* at 5–10.

On August 14, 2019, Plaintiff submitted a complaint stating that he continued to see Dr. Manlove, and the doctor refused to taper him off prednisone. Dkt. No. 34-5 at 11. An ICE contacted the Health Services Unit, which reported the same information noted above—that Plaintiff's gastroenterologist had begun to taper Plaintiff off prednisone but did not want to cease that medication to avoid a flare up. *Id.* at 2. The ICE dismissed the complaint, and the Office of the Secretary affirmed dismissal of Plaintiff's appeal. *Id.* at 2–7.

Plaintiff also submitted additional complaints later in 2019 about his Humira dosages. Dkt. No. 30-2 at 23–28. These complaints are not relevant to his claims against Defendants and will not be considered.

### E. Other Health Services Requests

On March 2, 2019, Plaintiff submitted a health services request (not an inmate complaint) in which he complained that Dr. Manlove "may have retaliated against me for complaining about his inept medical services. Dkt. No. 17, ¶ 14; Dkt. No. 1-1 at 20–23. On March 19, 2019, Plaintiff

7

filed a second health services request in which he stated that the Health Services Unit "continue[s] to allow Manlove to retaliate against me."  Dkt. No. 17, ¶ 14; Dkt. No. 1-1 at 45.

## ANALYSIS

### A. Legal Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Material facts" are those that "might affect the outcome of the suit."  *See Anderson*, 477 U.S. at 248.  A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id.*

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor.  *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).  As noted, Plaintiff rarely cites evidence in the record in support of his proposed facts or arguments in his brief opposing Defendants' motion.  "[A]rgument alone is insufficient to avoid summary judgment."  *Cooper v. Haw*, 803 F. App'x 942, 946 (7th Cir. 2020) (citing *Beatty v. Olin Corp.*, 693 F.3d 750, 754 (7th Cir. 2012) ("[T]he nonmoving party needs to come forward with *evidence*." (emphasis in original))).

### B. Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted."  42

8

U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), and expects inmates to adhere to "the specific procedures and deadlines established by the prison's policy," *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) (citing *Woodford*, 548 U.S. at 93). Exhaustion is an affirmative defense, and Defendants bear the burden of proving that Plaintiff failed to exhaust. *See Pavey v. Conley*, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

Inmates must exhaust all administrative remedies that the DOC has promulgated by rule before commencing a civil action against an officer, employee, or agent of the DOC. Wis. Admin. Code § DOC 310.05. To fully exhaust administrative remedies in Wisconsin, the inmate must file a complaint with the inmate complaint examiner within fourteen calendar days of the incident, *see id.* § DOC 310.07(2), appeal an adverse decision within fourteen days of that decision, *id.*, § DOC 310.12, and await a final decision from the Office of the DOC Secretary, *id.*, § DOC 310.13.

Defendants contend that Plaintiff failed to exhaust his administrative remedies for both claims against Dr. Manlove. Dkt. No. 16 at 13. They assert that Plaintiff did not file any complaints about Dr. Manlove's prescription of prednisone or alleged retaliation until after he had filed his complaint, in violation of § 1997e(a). Dkt. No. 33 at 2–3. Plaintiff concedes that he did not file timely complaints about Dr. Manlove but insists that his later-filed complaints and health service requests serve to exhaust his administrative remedies. Dkt. No. 25 at 4–6.

9

Defendants are correct that Plaintiff failed to exhaust his administrative remedies for his claims against Dr. Manlove. To properly exhaust, Plaintiff had to submit his complaints against Dr. Manlove through the inmate complaint system within fourteen days of the incident, as Wisconsin administrative rules require. He then had to follow that complaint through the full appeal process until he received a final decision from the Office of the Secretary. Plaintiff did none of those things for his claims against Dr. Manlove. Although he eventually filed inmate complaints stating that Dr. Manlove had improperly treated him with prednisone or retaliated against him, he filed those complaints months after filing this lawsuit and after I screened the complaint. Under § 1997e(a) Plaintiff was required to exhaust his administrative remedies *before* filing this federal lawsuit. Plaintiff complains that I denied his request to supplement his complaint in August 2019 with additional information. Dkt. Nos. 13 & 14. That Plaintiff alleges suffering additional harm after filing this lawsuit does not change the fact that he failed to exhaust his administrative remedies before pursuing his claims against Dr. Manlove in this lawsuit.

The health service requests he submitted, in which he complains about Dr. Manlove prescribing prednisone and retaliating against him, do not suffice to exhaust his administrative remedies. An inmate must strictly comply with the institutional rules for filing inmate complaints to properly exhaust his administrative remedies. Wisconsin administrative rules do not permit health services requests as a stand-in for inmate complaints. Those two submissions are different requests sent to different units within a prison and serve different purposes. *See Zibolsky v. Brookins*, No. 17-CV-1090-PP, 2018 WL 6042705, at *1 (E.D. Wis. Nov. 19, 2018), *reconsideration denied*, 2019 WL 318401 (E.D. Wis. Jan. 24, 2019). Because Plaintiff did not timely submit his concerns about Dr. Manlove to an ICE in an inmate complaint and complete the inmate complaint process, he did not properly exhaust his administrative remedies on those claims.

10

Before filing this lawsuit, Plaintiff filed one complaint about the Health Services Unit's treatment of his back pain. But that complaint is not directed at Dr. Manlove or his actions, and it does not mention the issues with Dr. Manlove's prescription of prednisone or his alleged retaliation. Even if this complaint were related to the claims proceeding in this lawsuit, the ICE rejected it as untimely. Dkt. No. 17, ¶ 7; Dkt. No. 19-2 at 2. In other words, Plaintiff failed to follow Wisconsin's administrative rules governing inmate complaints, so it was rejected. That untimely, rejected inmate complaint, even if it had properly addressed Plaintiff's concerns with Dr. Manlove, does not properly invoke a state's administrative remedies and would not exhaust his administrative remedies for these claims. *See Pozo*, 286 F.3d at 1024–25.

Because Plaintiff failed to exhaust his administrative remedies on his claims against Dr. Manlove, those claims are **DISMISSED without prejudice**. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (explaining that "*all* dismissals under § 1997e(a) should be without prejudice"). Dr. Manlove is entitled to judgment as a matter of law.

**C. Weinman**

Claims regarding the denial of medical care are analyzed under the Eighth Amendment, which prohibits cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To proceed on his Eighth Amendment claim, Plaintiff must demonstrate both that he "suffered from an objectively serious medical condition" and that Weinman was "deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. *Id.* at 837; *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

11

"A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). How long of a delay is tolerable "depends on the seriousness of the condition and the ease of providing treatment." *Id.* (quoting *McGowan*, 612 F.3d at 640).

Plaintiff does not respond to Defendants' argument that Weinman is entitled to summary judgment. He merely asserts that "Weinman's culpability is amply set out in plaintiff's annex affidavit(s) and supporting exhibits." Dkt. No. 25 at 14. Plaintiff does not provide *where* in his "annex affidavit(s) and supporting exhibits" he demonstrates Weinman's culpability. Plaintiff cannot simply attach his exhibits and tell the court to find in those documents a reason to deny the motion for summary judgment. He submitted four affidavits and nearly five hundred pages of exhibits, much of which is irrelevant to his claims against Dr. Manlove and Weinman. Plaintiff's proposed facts are of little help because, as noted, he fails to dispute Defendants' facts and rarely cites evidence (not even one of his four affidavits) in support of his facts. District courts are not required "to sift through 'improper denials and legal argument in search of a genuinely disputed fact.'" *Hinterberger v. City of Indianapolis*, --- F.3d ----, No. 19-3365, 2020 WL 3980690, at *4 (7th Cir. July 15, 2020*)* (quoting *Bordelon v. Chicago Sch. Reform Bd.*, 233 F.3d 524, 529 (7th Cir. 2000)); *see also Greer v. Bd. of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001) ("[A] lawsuit is not a game of hunt the peanut."). On this basis alone, I could grant Defendants' motion and consider Plaintiff's claim against Weinman waived or forfeited. *See Greer*, 267 F.3d at 727; *see also Rogers by Rogers v. K2 Sports, LLC*, 348 F. Supp. 3d 892, 905 (W.D. Wis. 2018) ("Failure to respond to an argument can result in waiver or forfeit of a claim.").

12

Even so, the undisputed evidence shows that Weinman is entitled to summary judgment. At most Plaintiff suffered a one-day delay between Dr. Manlove's initial Flexeril prescription on February 15, 2019, and his visit with Weinman the next day, during which Weinman gave Plaintiff a dose of Flexeril and ordered a seven-day prescription of the same. Weinman is not responsible for that one-day delay; the pharmacy had cancelled Dr. Manlove's order because of its general practice for prescriptions noted in the comment to Dr. Manlove. Even if this one-day delay could be attributed to Weinman, it is *less* of a delay than Plaintiff would have faced had the pharmacy processed Dr. Manlove's order. It is undisputed that Dr. Manlove placed a routine order for Flexeril, which means Plaintiff's prescription would not have begun until the following Monday— *three* days after his visit with Dr. Manlove. Weinman's order saved Plaintiff two additional days of waiting for his first dose of medication and provided him a one-week prescription he otherwise would not have received. Any delay in receiving his medication after the February 16, 2019 visit may be attributable to unit staff but is not attributable to Weinman, who it is undisputed was not responsible for dispensing the medication after he sent it to Plaintiff's unit.

Plaintiff contests Weinman's description of Plaintiff as agitated and threatening and states that Weinman was rude and disheveled in appearance during the February 16, 2019 visit. Even if true, Weinman's demeanor and appearance are immaterial and have no bearing on the legal conclusion whether he was deliberately indifferent to Plaintiff's medical condition. *See Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010) ("[D]isputed facts that are not outcome-determinative are not material and will not preclude summary judgment."). Plaintiff's claim against Weinman is that he failed to provide Plaintiff Flexeril on February 16, 2019. The undisputed evidence shows that Weinman contacted the on-call doctor who ordered a seven-day prescription of Flexeril for Plaintiff (the most the pharmacy would allow), provided

13

Plaintiff the first dose of Flexeril that day, and sent the remaining doses of the medication to Plaintiff's unit for dispensing. These actions show an attentive and active response to Plaintiff's pain and do not even suggest Weinman was deliberately indifferent to Plaintiff's medical condition. Weinman is entitled to judgment as a matter of law.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment, Dkt. No. 15, is **GRANTED**, and this case is **DISMISSED**. Plaintiff's claims against Dr. Manlove are **DISMISSED without prejudice** for failure to exhaust. Plaintiff's claim against Weinman is **DISMISSED with prejudice**.

Dated at Green Bay, Wisconsin this 22nd day of July, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.